**E-filed 6/12/07**

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM PHILLIP FERNANDEZ, | C 02-4264 JF (PR) |
|     Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
|  v. | |
| JOE MCGRATH, Warden, | |
|     Respondent. | |

    Petitioner, a California prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This Court has found that the petition raises the following cognizable claims: (1) the trial court's admission of the out-of-court statements implicating Petitioner by Petitioner's non-testifying co-defendant violated Petitioner's Sixth Amendment right to confrontation; (2) the multiple-murder special circumstance allegation is overbroad, violating Petitioner's rights under the Sixth and Fourteenth Amendments; and (3) the trial court's restriction on cross-examination of the mental health history and hallucinations of a key prosecution witness, Gilbert Garcia, violated Petitioner's right to confrontation under the Sixth Amendment. Respondent filed an answer and memorandum of points and authorities addressing the merits of the petition, and Petitioner has filed

a traverse. Having reviewed the briefs and the underlying record, the Court concludes that Petitioner is not entitled to relief based on the claims presented and will deny the petition.

## I. BACKGROUND[1]

On July 19, 1992, Federico Arevalo and Barry San Jose were shot to death. Arevalo died at the scene. San Jose, paralyzed from the neck down, died several days later. Arevalo was a member of the prison and street gang known as the Structure. He was a problem for the gang because he was undercutting the gang's price for PCP, was not sharing his profits with the gang, and had proven cowardly in prison. At a meeting attended by Petitioner, Edward Aroche, and Albert Guillen, it was decided that Arevalo should die for his transgressions. A plan was developed to use the promise of a lucrative drug deal to lure Arevalo to San Jose from San Francisco, rob him and kill him. Barry San Jose gave Arevalo a ride to San Jose. Petitioner, Guillen, Aroche, Randy DelCastillo and Gilbert Garcia were waiting for Arevalo. Once Arevalo and San Jose arrived, both men were shot dead. Petitioner's attempt to escape in Barry San Jose's red Volvo ended several blocks away when he was apprehended by the police. The others escaped and were not held accountable for their part in the murders until 1994, when Garcia decided to talk to law enforcement about the murders and testify against the others.

Petitioner was convicted by a Santa Clara Superior Court jury of two counts of first degree murder, two counts of robbery, possession of PCP for sale, and transportation of PCP. The jury also found the multiple murder, lying in wait and robbery special circumstances to be true. Petitioner was sentenced to a term of seventeen years in state prison, plus life without the possibility of parole. On direct appeal, the state appellate court reversed one robbery count, struck the robbery special

---

[1] The relevant facts are set forth in the unpublished opinion of the California Court of Appeal, Sixth Appellate District, People v. William Phillip Fernandez, No. H017793 (August 28, 2001); Respondent's Exhibit 3 at 1-2.

Order Denying Petition for Writ of Habeas Corpus
P:\Prose\Sj.jf\hc.02\Fernandez 264 den          2

circumstance findings, and then affirmed the judgment on August 28, 2001. The state supreme court denied a petition for review on November 28, 2001. The instant petition was filed on September 9, 2002.

## II. STANDARD OF REVIEW

Because the instant petition was filed after April 24, 1996, it is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), which imposes significant restrictions on the scope of federal habeas corpus proceedings. Under AEDPA, a federal court cannot grant habeas relief with respect to a state court proceeding unless the state court's ruling was "contrary to, or an involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" Id. at 409. In examining whether the state court decision was objectively unreasonable, the inquiry may require

analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003). The "objectively unreasonable" standard does not equate to "clear error" because "[t]hese two standards . . . are not the same. The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The court must presume correct any determination of a factual issue made by a state court unless the Petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. ANALYSIS

**A. Petitioner's Right to Confrontation Was Not Violated by the Trial Court's Admission of Out-of-Court Hearsay Statements at Trial**

Petitioner alleges that the trial court's admission of co-defendant Edward Aroche's statements at trial violated his Sixth Amendment right to confrontation. Petitioner contends that the admission of Aroche's statements under the excited utterance and co-conspirator hearsay exceptions pursuant to California Evidence Code §§ 1240, 1223 was erroneous. Additionally, Petitioner claims that the admission of Aroche's statements violates the Aranda/Bruton rule.[2]

Aroche did not testify at trial. Garcia testified that Aroche told him, shortly after the shooting incident, that "Dreamer[3] shot me in the hand." Resp. Ex. 2 (Reporters transcript; "RT") at 7056. Jesus Ramirez, Aroche's cellmate in prison, testified that Aroche told him in June or July of 1993 that "Dreamer had accidentally shot him" in the hand while Aroche was holding the victim in an attempt to subdue him. Resp. Ex. 2 at 7619, 7622-24, 7633.

---

[2] People v Aranda, 63 Cal.2d 518 (1965); People v. Bruton, 391 U.S. 123 (1968).

[3] Petitioner was know by the nickname of "Dreamer."

Order Denying Petition for Writ of Habeas Corpus
P:\Prose\Sj.jf\hc.02\Fernandez 264 den      4

The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with witnesses against him." U.S. Const. Amend. VI. The federal confrontation right applies to the states through the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 403 (1965). The ultimate goal of the Confrontation Clause is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. Crawford v. Washington, 541 U.S. 36, 61 (2004). It commands not that evidence be reliable but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. Id.; see Davis v. Alaska, 415 U.S. 308, 315-16 (1974) (a primary interest secured by the Confrontation Clause is the right of cross-examination). The Confrontation Clause applies to all "testimonial" statements. Crawford v. Washington, 541 U.S. 36 at 51-51. "Testimony ... is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." Id. at 51 (citations and quotation marks omitted); see id. ("An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."). The Confrontation Clause applies not only to in-court testimony but also to out-of-court statements introduced at trial, regardless of the admissibility of the statements under state laws of evidence. Id. at 50-51. Out-of-court statements constitute hearsay when offered in evidence to prove the truth of the matter asserted. Anderson v. United States, 417 U.S. 211, 219 (1974). While the Confrontation Clause does not necessarily bar the admission of hearsay statements, it may prohibit introducing evidence that otherwise would be admissible under a hearsay exception. Idaho v. Wright, 497 U.S. 805, 813, 814 (1990); Lilly v. Virginia, 527 U.S. 116, 139-40 (1999) (plurality) (admission of accomplice's hearsay confession to police inculpating defendant violated Confrontation Clause); id. at 143 (Scalia, J., concurring) (same).

The Confrontation Clause applies to all out-of-court testimonial statements offered for the truth

Order Denying Petition for Writ of Habeas Corpus
P:\Prose\Sj.jf\hc.02\Fernandez 264 den           5

of the matter asserted, i.e., "testimonial hearsay." See Crawford, 541 U.S. at 51.[4] While the Supreme Court has not articulated a comprehensive definition of testimonial hearsay, "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Id. at 68.[5] Crawford applies only to "testimonial statements offered for the truth of the matter asserted." Id. at 36. The Supreme Court noted that with regard to non-testimonial hearsay "...it is wholly consistent with the Framer's design to afford the states flexibility in their development of hearsay law." Id. at 36. Where non-testimonial hearsay is at issue, the states may develop evidentiary rules for its admissibility, including exemption of such statements from Confrontation Clause scrutiny altogether. Id. at 68.

At the time the California Court of Appeal rendered its decision in this case, the governing standard was Ohio v. Roberts, 448 U.S. 56 (1980), which held that out-of-court testimonial statements may be admitted as long as the witness is unavailable and the statements have "adequate indicia of reliability," i.e., fall within a "firmly rooted hearsay exception" or bear "particularized guarantees of trustworthiness." Id. at 66. Crawford, which was decided after Petitioner filed the instant petition, overruled Roberts. However, while Crawford announced a "new rule" for purposes of Teague analysis,

---

[4] The Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. Crawford, 541 U.S. at 59 n.9.

[5] See, e.g., United States v. Allen, 425 F.3d 1231, 1235 (9th Cir. 2005) (statements to law enforcement officers); Bockting v. Bayer, 399 F.3d 1010, 1011(9th Cir.), amended, 408 F.3d 1127 (9th Cir. 2005), rev'd on other grounds sub nom., Whorton v. Bockting, 127 S. Ct. 1173 (2007) (statements made by child-victim in interview with police were testimonial hearsay governed by Crawford). Statements made to police by a victim reporting an attempt to enter her home, when the conversation was initiated by the victim and the statements were not the result of police interrogation, were not testimonial and thus not subject to Crawford's limits on testimonial hearsay. Leavitt v. Arave, 383 F.3d 809, 830 n.22 (9th Cir. 2004). Other examples of statements considered not to be testimonial include a statement made by the witness to his attorney in an interview at a jail, Jensen v. Pliler, 439 F.3d 1086, 1089 (9th Cir. 2006), co-conspirator statements, United States v. Allen, 425 F.3d at 1235; United States v. Bridgeforth, 441 F.3d 864, 869 n.1 (9th Cir. 2006), diary entries, Parle v. Runnels, 387 F.3d 1030, 1037-38 (9th Cir. 2004). In addition, admission of the mere fact that a codefendant made a statement to the police, without the content of the statement, did not amount to admission of the codefendant's "testimony" under Crawford. Mason v. Yarborough, 447 F.3d 693, 696 (9th Cir. 2006).

that rule does not come within the exception for "watershed rules" articulated by the Supreme Court in Teague v. Lane, 489 U.S. 288, 310-316 (1989). See Whorton v. Bockting, 127 S. Ct. 1173, 1184 (2007) (applying Teague). Accordingly, Crawford does not apply retroactively on collateral attack. Id.

Confrontation Clause claims are subject to harmless error analysis. United States v. Nielsen, 371 F.3d 574, 581 (9th Cir. 2004) (post-Crawford case). For purposes of federal habeas corpus review, the standard applicable to violations of the Confrontation Clause is whether the inadmissible evidence had an actual and prejudicial effect upon the jury. See Hernandez v. Small, 282 F.3d 1132, 1144 (9th Cir. 2002) (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)); Webb v. Lewis, 44 F.3d 1387, 1393 (same).[6]

Aroche's statements at issue here are non-testimonial because they were not offered "under circumstances which would lead and objective witness to reasonably believe that [it] would be available for later use at trial." Leavitt v. Arave, 383 F.3d 809, 830 n. 22 (9th Cir. 2004). In fact these statements were made to participants in an on-going conspiracy in the course of private conversations. Resp. Ex. 3 at 36. Petitioner claimed on direct appeal that the trial court extended the excited utterance and co-conspirator hearsay exceptions beyond their permissible scope. The trial court held that Aroche's statement to Garcia was admissible hearsay under the excited utterance exception, or alternatively under the co-conspirator exception. The appellate court concluded that the statement was admissible as an excited utterance and therefore declined to reach the co-conspirator exception with regard to the Aroche-Garcia statement. The trial court found that Aroche's statement to Ramirez was admissible hearsay under the co-conspirator exception. The state appellate court affirmed the trial court's conclusion.

---

[6] If the state court disposed of a constitutional error as harmless under an appropriate standard of review, federal courts must, for purposes of application of the "unreasonable application" clause of § 2254(d)(1), first determine whether the state court's harmless error analysis was objectively unreasonable. Medina v. Hornung, 386 F.3d 872, 878 (9th Cir. 2004). If the federal court determines that the state court's harmless error analysis was objectively unreasonable, and thus an unreasonable application of clearly established federal law, the federal court then proceeds to the Brecht analysis. Id. at 877. Analysis under the "contrary to" clause of § 2254(d)(1) is not affected by this rule. Id.

Petitioner also alleges that the trial court committed <u>Aranda</u>-<u>Bruton</u> error by admitting Aroche's statements. Exh. 3 at 30. The Aranda-Bruton rule prohibits a court from allowing the hearsay testimony of a non-testifying co-defendant into evidence unless it qualifies under a firmly rooted hearsay exception. <u>See</u> <u>People v. Anderson</u>, 43 Cal.3d 1104, 1121 (1987). The appellate court rejected Petitioner's argument, recognizing that <u>Bruton</u> prohibits the introduction at a joint trial of one non-testifying co-defendant's hearsay statement implicating another jointly-tried co-defendant, except when the statement meets the requirements of a firmly-rooted hearsay exception. The appellate court found that Aroche's statement to Garcia was properly admitted as a spontaneous declaration and that Aroche's statement to Ramirez was properly admitted under the co-conspirator's exception to the hearsay rule. There was no <u>Bruton</u> error. Resp. Ex. 3 at 30, 34, 40.

Because Aroche and Petitioner were co-defendants at trial, Aroche could not be called to testify once he asserted his Fifth Amendment right. Thus, pursuant to the Supreme Court's Sixth Amendment jurisprudence at the time of trial Aroche was deemed "unavailable." <u>Ohio v. Roberts</u>, 448 U.S. 56 (1980). Once Aroche's "unavailability" was established, the trial court then examined the "trustworthiness" of the hearsay statements at issue. The court determined that the statements bore "adequate indicia of reliability" to be admitted into evidence.

### a. Excited Utterance Exception

Under California Evidence Code § 1240, "[e]vidence of a statement is not made inadmissable by the hearsay rule if the statement: (a) [p]urports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and (b) [w]as made spontaneously while the declarant was under the stress or excitement of such perception." Cal. Evid. Code § 1240. Petitioner maintains that the excited utterance exception should not apply to Aroche's statement to Garcia because of the ample time Aroche had to reflect on the situation and take his own interest into account prior to speaking with Garcia. Petition at 11.

Order Denying Petition for Writ of Habeas Corpus
P:\Prose\Sj.jf\hc.02\Fernandez 264 den                8

The appellate court concluded that the exception applied because the circumstances of the crime, along with Aroche's injury, were "likely to produce the utmost excitement and shock." Resp. Ex. 3 at 32. See McLaughlin v. Vinznat, 522 F.2d 448, 450 (1st Cir. 1975). The court also noted that evidence in the record indicated that shortly before Aroche made the statement he still was excited from the events that had just occurred. Resp. Ex.3 at 31. Aroche spoke with Garcia less than an hour after the murders; he had been shot in the hand and was bleeding. Id. at 15. Aroche still seemed "excited" and "scared" to his companions. Id. Based upon its review of the underling record, the appellate court affirmed the trial court's determination that the statement made by Aroche to Garcia was admissible under the excited utterance exception.

### b. Co-Conspirator Hearsay Exception

Petitioner next claims that Aroche's statement to Ramirez that, "Dreamer had accidentally shot him," was inadmissible under the co-conspirator hearsay exception because the conspiracy had ended before the statement was made. Under California law, to satisfy the co-conspirator hearsay exception the following is required: "(1) [t]he declarant's statement must be made during a conspiracy and in furtherance of its objectives; (2) [i]t must be made before or during the time that the party against whom it is offered was participating in the conspiracy; and, (3) [t]he conspiracy must be independently proved." Cal. Evid. Code § 1223. Petitioner maintains that the proffered statement was made after the conspiracy [to murder] had concluded. The appellate court concluded that Aroche's statement qualified under the co-conspirator exception because the conspiracy at issue here could be deemed to have extended beyond the completion of the substantive crime. Citing People v. Dominquez, 121 Cal.App.3d. 481 (1981), the court observed:

> "[a]t the time Aroche spoke to Ramirez, both he and Ramirez were members of the conspiracy that had ordered Arevalo's death, and that among the yet-to-be- achieved goals of their conspiracy were regaining control of the PCP trade in San Francisco, enforcing obedience to the gang's hierarchy decision about who ran the PCP trade, imposing sanctions for disobedience, and conferring of prestige for service to the organization. None of these

objectives was achievable without communication of the details of the killing to other members of the conspiracy and to others up the chain of command in the NF organization. Thus, adherence to the reporting requirements was integral to the conspiracy here. We think the evidence amply established the existence at the time of the declarations of 'continuing efforts by conspirators . . . still acting in concert towards the common objectives] of . . . their agreement . . . notwithstanding the prior attainment of their primary objective of killing [Arevalo]. Resp. Ex. 3 at 40.

The appellate court noted that Petitioner's reliance on People v. Saling, 7 Cal.3d 844 (1972), was misplaced because "ultimately it is for the trier of fact - considering the unique circumstances and the nature and purpose of the conspiracy in each case - to determine precisely when the conspiracy has ended." Resp. Ex. 3 at 35.

The appellate court concluded that, so long as the members of the conspiracy continued to advance the common objectives, the conspiracy was on-going. These factors allowed for the conspiracy to extend beyond the substantive crime to the activities contemplated by conspirators in furtherance of the objectives of their conspiracy. Resp. Ex. 3 at 36; See Saling, 7 Cal.3d at 852. The appellate court recognized that none of these goals could have been accomplished independent of communication between members of the conspiracy regarding the details of the murders. The court held that a prima facie showing of the "existence, at the time of the statements, of continuing efforts by the conspirators *qua* conspirators" could be made consistent with the rule established in Saling. Resp. Ex. 3 at 35-36. The court found that there was an abundance of evidence in the record to demonstrate the continuing efforts of the members of the conspiracy to achieve common objectives of their agreement. This evidence included, but is not limited to, communications in attempt to conceal the details of the murders. Resp. Ex. 3 at 40.

A state court's evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process. Pulley v. Harris, 465 U.S. 37, 41 (1984); Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991); Middleton v. Cupp,

768 F.2d 1083, 1085 (9th Cir. 1985), cert. denied, 478 U.S. 1021 (1986).  Here, Petitioner fails to demonstrate that the admission of Aroche's statements violated his Constitutional rights, or that there was any substantial and injurious effect on the verdict based upon the admission of these statements. The evidence at trial showed that Petitioner was at the scene of the murder and drove the victim's car from the scene.  Resp. Ex. 3 at 8.  Eyewitness testimony identified Petitioner as the shooter.  Resp. Ex. 3 at 11, n.9.

Based upon its review of the underlying record, the Court concludes that the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).

**B. The Multiple-Murder Special Circumstance Allegation is Constitutional**

Petitioner contends that California's multiple-murder special circumstance statute is overly broad and thus violates the Sixth and Fourteenth Amendments.  A state criminal statute may be challenged as unconstitutionally vague and/or overbroad by way of a petition for a writ of habeas corpus by a prisoner convicted under the statute.  Vlasak v. Superior Court of California, 329 F.3d 683, 688-90 (9th Cir. 2003); Melugin v. Hames, 38 F.3d 1478, 1480-89 (9th Cir. 1994); Panther v. Hames, 991 F.2d 576, 578-80 (9th Cir. 1993).  For a defendant to be eligible for the death penalty in a homicide case, the Eighth Amendment requires that the trier of fact convict the defendant of murder and find one "aggravating circumstance" (or its equivalent) at either the guilt or penalty phase.  Tuilaepa v. California, 512 U.S. 967, 972 (1994).  The aggravating circumstance may be contained in the definition of the crime, a separate sentencing factor or both, and it must meet two additional requirements.  Id.  First, the circumstance may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder.  Id.  Second, the definition of the aggravating circumstance may not be unconstitutionally vague.  Id.; Godfrey v. Georgia, 446 U.S. 420, 428 (1980); cf. Houston v. Roe, 177

Order Denying Petition for Writ of Habeas Corpus
P:\Prose\Sj.jf\hc.02\Fernandez 264 den             11

F.3d 901, 906 (9th Cir. 1999) (state sentencing guidelines need not need not clearly distinguish between criminals subject to life without possibility of parole and the lesser punishment of life with parole because death penalty not at stake).

The Supreme Court's vagueness review in this context has been quite deferential. Tuilaepa, 512 U.S. at 973 (citations omitted). A factor is not unconstitutionally vague if it has some "'common-sense core of meaning . . . that criminal juries should be capable of understanding.'" Id. (quoting Jurek v. Texas, 428 U.S. 262, 279 (1976) (White, J., concurring in judgment)). Here, the state appellate court recognized:

> "[t]he United States Supreme Court's jurisprudence on the capital decision making process has distinguished between the *eligibility* and the *selection* decision. Tuilaepa v. California, 512 U.S. 967, 971 (1994) (emphasis in original). To render a defendant eligible for the death penalty in a homicide case, we have indicated that the trier of fact must convict the defendant of murder and find one 'aggravating circumstance' . . . at either the guilt or penalty phase. [Citation] . . . [T]he aggravating circumstance must meet two requirements. First the circumstance may not apply to every defendant convicted of murder. [Citations.] Second, the aggravating circumstance may not be unconstitutionally vague . . . [¶] We have imposed a separate requirement for the selection decision, where the sentencer determines whether a defendant eligible for the death penalty should in fact receive that sentence. 'What is important at the selection stage is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime.'"

Resp. Ex 3. at 64-65, citing to Tuilaepa, 512 U.S. at 971-972. (emphasis in original).

California's multiple-murder special circumstance is applicable where: (1) the defendant has committed murder, not merely a homicide; (2) the defendant has committed more than one murder; and, (3) the defendant has been convicted of more than one murder in the subject proceeding. See Cal. Penal Code § 190.2(a)(3).

The appellate court upheld this statute as constitutional pursuant to Tuilaepa, 512 U.S. 972, concluding:

> "Defendant's argument confuses the constitutionality of [the] statute's eligibility criteria with the constitutionality of the sentencer's selection criteria. For the purposes of eligibility, the defendant's culpability must be that of a murderer; liability for a lesser homicide will not suffice. The statute at issue here does not run afoul of that principle - it requires culpability for murder. By doing so, it focuses on the only *mens rea* that is relevant at the eligibility stage. *United States v. Cheely*, 36 F.3d 1439 , is distinguishable,

> in that the statute found unconstitutional there made eligible for the death penalty persons who did not have the *mens rea* of murderers." [¶] The second statutory criteria - that the defendant be found culpable of *multiple* murders - satisfies the requirement of an aggravating circumstance that applies only to a subclass of defendants convicted of murder, and is not vague. Thus, the multiple murder requirement serves the purpose, at the eligibility phase, of 'distinguishing the few cases in which [the death penalty or life without the possibility of parole] is imposed from the many cases in which it is not.' (*Godfrey v. Georgia*, (1980) 446 U.S. 420, 427). Additionally, from the *mens rea* standpoint, the defendant who murders more than once has a more culpable mental state than the person who murders only once. Defendants' hypotheticals about the theoretical gradations of culpability encompassed by the *mens rea* for murder do not demonstrate that making multiple murderers death - or LWOP - eligible is unconstitutional."

Resp. Ex. 3 at 65.

The appellate court concluded that California's multiple-murder statute sufficiently limited the class of individuals subject to the death penalty and that the statute was not vague. This Court concludes that the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

**C.   The Trial Court's Limitation of Petitioner's Cross-Examination of Gilbert Garcia did not Violate Petitioner's Right to Confrontation**

Finally, Petitioner contends that he was deprived of his Constitutional rights to confrontation and cross-examination by the trial court's restriction of the cross-examination of Gilbert Garcia. At trial, during cross-examination by co-defendant DelCastillo's counsel, Garcia was asked certain questions with respect to which he declined to answer and asserted the psychotherapist/patient privilege. Garcia was asked whether he told his psychiatrist that he saw people who were not there. Resp. Ex. 2; RT at 7383. Garcia also was asked whether he told anyone he needed medication because he was anxious in June 1997. Id. at 7390. The trial court upheld the invocation of the psychotherapist/patient privilege, concluding that Garcia had the right to claim the privilege for statements he made to his psychiatrist. Id. at 7384-7386.

The Confrontation Clause does not prevent a trial judge from imposing reasonable limits on

cross-examination based on concerns of harassment, prejudice, confusion of issues, witness safety or interrogation that is repetitive or only marginally relevant. Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). To determine whether a criminal defendant's Sixth Amendment right of confrontation has been violated by the exclusion of evidence on cross-examination, a court must inquire whether: "(1) the evidence was relevant; (2) there were other legitimate interests outweighing the defendant's interests in presenting the evidence; and (3) the exclusion of evidence left the jury with sufficient information to assess the credibility of the witness."  See  United States v. Beardslee, 197 F.3d 378, 383 (9th Cir. 1999) (citations omitted); see, e.g., Plascencia v. Alameda, 467 F.3d 1190, 1201 (9th Cir. 2006) (exclusion of cross-examination that would have provided cumulative or repetitive evidence did not violate Confrontation Clause or was harmless error); Fowler v. Sacramento County Sheriff's Dept, 421 F.3d 1027, 1041 (9th Cir. 2005) (right to confrontation violated where trial court precluded cross-examination of victim, in prosecution for annoying or molesting a minor, as to prior accusations she had made);  United States v. Schoneberg, 396 F.3d 1036, 1043 (9th Cir. 2005) (right of confrontation violated when trial court prevented defense from using cross to make a record from which to argue why the witness might be biased)

The Confrontation Clause guarantees an opportunity for effective cross examination, not cross examination that is effective in whatever way, and to whatever extent, the defense might wish. See Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam); see, e.g., Coleman v. Calderon, 150 F.3d 1105, 1112 (9th Cir.1998) (Confrontation Clause does not require that the prosecutor disclose evidence that will help the defense effectively cross-examine a prosecution witness), rev'd and remanded on other grounds, 525 U.S. 141, 147 (1998). A trial court's limitation on cross-examination does not violate the Confrontation Clause unless it limits relevant testimony, prejudices the defendant, and leaves the jury without sufficient information to evaluate the biases and motivation of the witness. United States v. Bridgeforth, 441 F.3d 864, 868 (9th Cir. 2006). If the jury is given sufficient information to evaluate

Order Denying Petition for Writ of Habeas Corpus
P:\Prose\Sj.jf\hc.02\Fernandez 264 den                14

the witness's biases and motivations without the disputed material, there is no Confrontation Clause violation. Id.

In the instant case, the trial court allowed Petitioner and his co-defendants wide latitude in cross-examining Garcia. The appellate court observed that Garcia's cross-examination was "exhaustive and searching." Resp. Ex. 3 at 49-50.

> "[T]he jury did learn the details of Garcia's plea bargain and his various motivations to lie, including his testimony that he was motivated to enter into the plea agreement by his desire to "save [his life]" and avoid the death penalty. The jury also learned that at the time Garcia was trying to get full immunity for his part in the crimes, he was still lying to the police, and that he knew he would be unable to broker an advantageous plea bargain for himself unless he could convince the prosecuting authorities he was not the actual shooter. Through cross-examination it also became clear that insofar as Garcia placed himself in the front passenger seat of the blue car but fingered Fernandez as the gunman and not himself, his testimony was somewhat at odds with that of [David] Zamora, who testified that the gunman came from the front passenger seat of the blue car. In addition, cross-examination about Garcia's illegal drug usage and dependancy, his psychotropic medications taken while incarcerated, his extensive criminal career, his self-deluded fantasies about life in a federal witness protection program with the wife he was convicted of abusing, the fact that he lied to police in the first interview to minimize his role in the double homicide, exposed to the jury the numerous reasons why it should not consider his testimony worthy of belief."

Resp. Ex. 3 at 49-50.

The appellate court concluded that "against this background, the trial court did not err in permitting Garcia to assert his privilege not to answer as to whether he told his psychiatrists he was suicidal over the death penalty, or whether he told them he was withholding information to get a better deal. In our view, as to these two questions, the tension between the witness' privilege and defendants' right to cross-examine did not violate defendants federal constitutional rights." Exh. 3 at 50. The court noted that there was no offer of proof in the record as to what Garcia actually may have said to his therapist, and that any error was harmless:

> "[C]onsiderable latitude was permitted in questioning Garcia about his medications, and about his hallucinations while taking illegal drugs, as well as a wide range of topics bearing on Garcia's credibility and reliability as a witness. However, assuming arguendo, that the trial court violated defendants' Sixth Amendment rights by permitting Garcia to

> assert his psychotherapist-patient privilege to this one question, we are convinced the error was harmless beyond a reasonable doubt. As discussed elsewhere in this opinion [Resp. Ex 3 at 26-28], Garcia's testimony, forensic evidence and admissions that placed each of the defendants at the scene of the crime and in the thick of the action. Viewing error in light of the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, 'the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case,' there is no possibility the trial court's restriction of cross-examination on this one point prejudiced the defendants. (*People v. Belmontes, supra*, 45 Cal.3d at p. 780.)."

Resp. Ex. 3 at 50-51.

In order to obtain habeas relief on the basis of an evidentiary error, a petitioner must show that the error was one of constitutional dimension <u>and</u> that it was not harmless. <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993).[7] He must show that the error had "'a substantial and injurious effect' on the verdict." <u>Dillard v. Roe</u>, 244 F.3d 758, 767 n.7 (9th Cir. 2001) (quoting <u>Brecht</u>, 507 U.S. at 623).

As Respondent points out, the trial court gave the defense wide latitude in challenging Garcia's credibility and ability to perceive and recall accurately events on the night of the murder, and Garcia's testimony was corroborated by several other witnesses at trial. Resp. Mem. at 16. Based upon its review of the underlying record, the Court concludes that the appellate court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

\\\

\\\

---

[7] Note, however, that if the state court disposed of a constitutional error as harmless under an appropriate standard of review, federal courts must, for purposes of application of the "unreasonable application" clause of § 2254(d)(1), first determine whether the state court's harmless error analysis was objectively unreasonable. <u>Medina v. Hornung</u>, 386 F.3d 872, 878 (9th Cir. 2004). If the federal court determines that the state court's harmless error analysis was objectively unreasonable, and thus an unreasonable application of clearly established federal law, the federal court then proceeds to the <u>Brecht</u> analysis. <u>Id.</u> at 877. Analysis under the "contrary to" clause of § 2254(d)(1) is not affected by this rule. <u>Id.</u>

## IV.  CONCLUSION

The Court finds that Petitioner has failed to show any violation of his federal constitutional rights in the underlying state criminal proceeding.  Accordingly, the petition for writ of habeas corpus is denied.  The Clerk shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: __6/11/07_____                          _____
                                                                              JEREMY FOGEL
                                                                              United States District Judge

A copy of this ruling was mailed to the following:

William Phillip Fernandez
K-76275
Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA 95532

Sharon R. Wooden
CA State Attorney General's Office
455 Golden Gate Ave
Suite 11000
San Francisco, CA 94102-7004

Order Denying Petition for Writ of Habeas Corpus
P:\Prose\Sj.jf\hc.02\Fernandez 264 den                    18